WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Olivera Tanaskovic,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-15-2535-PHX-DKD<br><br>**ORDER** |

Olivera Tanaskovic appeals from the denial of her application for benefits by the Social Security Administration. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and, with the parties' consent to Magistrate Judge jurisdiction, pursuant to 28 U.S.C. § 636(c). Tanaskovic argues that she is entitled to benefits because, among other reasons, the ALJ failed to properly weigh the medical source opinions. (Doc. 25) The Court agrees.

**BACKGROUND**

Tanaskovic did not complete high school[1] and was 34 years old in January 2011, the amended onset date of her alleged disability. (Tr. 13, 35, 39) Her past relevant work was as a cashier, cashier/checker, and receptionist. (Tr. 65)

---

[1] The record is clear that she did not finish high school but it unclear how long she stayed in school: 9th grade (Tr. 39), sophomore year (Tr. 770), 11th grade (Tr. 434), or as a "freshman or a junior" (Tr. 615).

Medical Evidence: Treating Providers[2]

In early December 2010, Tanaskovic established care with a psychiatric nurse practitioner, James Milacek. (Tr. 434-39) NP Milacek described her mood as anxious, angry, and depressed and he prescribed her various medications based on his diagnosis of mood disorder NOS, adjustment reaction with mixed emotional features, and depressive disorder. (Tr. 436, 437, 439)

Subsequently, Tanaskovic received treatment from NP Milacek in late December 2010, March 2011, April 2011, July 2011, September 2011, October 2011, November 2011, and April 2012. At these medication management appointments, NP Milacek noted anxiety (March 2011 at Tr. 562, April 2011 at Tr. 543, September 2011 at Tr. 508, October 2011 at 492); depression and anxiety (December 2010 at Tr. 600, July 2011 at Tr. 529, November 2011 at 484, April 2012 at Tr. 467); and constricted affect (July 2011 at Tr. 528, September 2011 at Tr. 508, October 2011 at Tr. 492, April 2012 at Tr. 466).

In May 2012, Tanaskovic presented to the emergency department for suicidal ideation and self-inflicted lacerations. (Tr. 339-43) She was evaluated for inpatient psychiatric care but was released home with directions to follow-up with a psychiatric care clinic the following day. (Tr. 339) The record does not indicate whether she did, in fact, follow-up the following day. However, less than three weeks later, she had an appointment with NP Milacek where he concluded her status was "worsened" because of her increasing mood instability and self-harming behaviors. (Tr. 450)

Ten days after this appointment with NP Milacek, Tanaskovic again presented to the emergency department reporting suicidal thoughts and panic attacks.[3] (Tr. 364) The psychiatric evaluation described her as feeling overwhelmed, "currently not showering on a regular basis and has generally decompensated." (Tr. 358) She was discharged with instructions to seek follow-up treatment. (Tr. 359, 379)

---

[2] Tanaskovic does not appeal the ALJ's finding that her physical impairments were not severe. (Doc. 24 at 2, n.1) Accordingly, the Court will only address her mental health.

[3] The record reflects that her sister had recently died. (Tr. 358, 364)

Tanaskovic continued to have regular medication management appointments with NP Milacek in July 2012, August 2012, September 2012, November 2012, January 2013, February 2013, and March 2013. In September 2012, Tanaskovic reported that her mood was "a little bit better." (Tr. 687) In January 2013, Tanaskovic first reported auditory hallucinations. (Tr. 676) In February 2013, she reported that she was in "less distress." Otherwise, her symptoms were either "unchanged" or "worsened." (Tr. 629, 645, 676, 682)

At these appointments, NP Milacek noted that her mood was anxious (November 2012 at Tr. 682, February 2013 at Tr. 664); depressed and anxious (September 2012 at Tr. 688, March 2013 at Tr. 644, April 2013 at Tr. 628) or depressed, anxious, and agitated (January 2013 at Tr. 676). He described her thought content as fearful (February 2013 at Tr. 664); depressive and fearful (September 2012 at Tr. 688, March 2013 at Tr. 645, April 2013 at Tr. 628); or depressive, fearful, help/hopelessness, and anhedonic (January 2013 at Tr. 676). He also noted her affect as blunted (January 2013 at Tr. 676) or constricted (February 2013 at Tr. 664, March 2013 at Tr. 644, April 2013 at Tr. 628).

In April 2013, Tanaskovic transferred care to psychiatrist Hany Ashamalla, M.D. At her initial evaluation, Dr. Ashamalla noted that Tanaskovic had fair insight and judgment, auditory and visual hallucinations, flat affect, dysphoric mood, occasionally loose associations, and thought content that was "paranoid" and "fearful." He diagnosed her with schizoaffective disorder and prescribed various medications. (Tr. 713-16)

Tanaskovic had medication management appointments with Dr. Ashamalla in May 2013, June 2013, July 2013, August 2013, and September 2013. The medical records consistently document that Tanaskovic reported auditory and visual hallucinations. (May 2013 at Tr. 709, June 2013 at Tr. 749, July 2013 at Tr. 773, August 2013 at Tr. 769, September 2013 at Tr. 765)

In conjunction with her August 2013 appointment, Dr. Ashamalla completed a form entitled "Medical Assessment of Claimant's Ability to Perform Work Related Activities" (the "RFC Form"). (Tr. 769) He designated Tanaskovic as having a

"moderate" ability to perform simple tasks and to respond appropriately to supervisors but rated her limitations as "moderately severe" or "severe" in all other areas. (Tr. 760-61)  He also indicated that her psychiatric symptoms had a moderately severe impact on the sustainability of her work pace. (Tr. 761)

In September 2013, Dr. Ashamalla noted that Tanaskovic stated that her symptoms – hearing voices, overwhelming anxiety, and nightmares – were the same despite further changes in medication. (Tr. 765)  In response, he again modified her medication regime. (Tr. 767)  There are no further medical records from Dr. Ashamalla in the record before the Court.[4]

Medical Evidence:  Non-Treating Physicians[5]

In October 2012, Elliot Salk, Ph.D., reviewed Tanaskovic's file and found that she had mild restrictions in her activities of daily living and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (Tr. 82, 95)  Dr. Salk found that she had some moderate RFC limitations and concluded that she was capable of performing "simple tasks on a sustained basis." (Tr. 83-86; 97-99)  He concluded that she was not disabled.

On reconsideration in July 2013, Stephen Bailey, Ed.D., found that Tanaskovic had some moderate limitations and described her RFC as follows:

> [Tanaskovic] maintains the ability to understand, remember and carry out simple 1-2 step work related instructions.  She can make commensurate work related decisions and adjust to changes in the routine work setting.  She can work with and around others in low stress or low social demand setting[s].

(Tr. 114; 128)  He concluded that she continued to be not disabled. (Tr. 116; 130)

---

[4] There are no records of Tanaskovic receiving treatment from Dr. Ashamalla in November 2013.  The ALJ opinion refers to such a visit but the record cited by the ALJ was printed in November 2013 and signed by Dr. Ashamalla on September 30, 2013, the date of the visit. (*Compare* Tr. 20 *with* Tr. 765-68)

[5] In September 2012, Tanaskovic was evaluated by Sharon Steingard, D.O. (Tr. 613-19)  Dr. Steingard did not complete the Medical Source Statement portion of her evaluation and so the ALJ gave this opinion little weight. (Tr. 21)  On appeal, Tanaskovic does not challenge this determination.

Administrative Hearing

On January 22, 2014, ALJ Ted Ambruster conducted a hearing where Tanaskovic and vocational expert Mark Kelman testified. (Tr. 33-73)

Tanaskovic testified that she left her last job at a hotel's front desk because she was not reliable and that she "was always scared to go to work because the voices and the hallucinations" made her think that "people at the hotel were coming after me." (Tr. 40, 59) She could not remember whether her other positions were full- or part-time and she could not remember several of the jobs that were listed in her earnings records. (Tr. 42-45) She stated that she's too scared to drive, take the bus, or go outside. (Tr. 48, 50) Instead, she only leaves the house to go to her doctor's appointments. (Tr. 51, 60) She testified that she does not have any friends. (Tr. 50, 51) She described her auditory hallucinations as increasing in intensity and volume over the last few years and that the voices never say anything positive. (Tr. 52-53, 63) She said that the medication does not help with the voices and described a recurring visual hallucination. (Tr. 53, 55, 61-63) She stated that medication sometimes helps end her anxiety attacks but that medication has not helped with her depression. (Tr. 56-57) She testified that she had been prescribed Tramadol for her hip and leg pain, had taken a dose before the hearing, and that it made her feel "a little spacey and a little tired." (Tr. 58)

Vocational expert Mark Kelman testified that Tanaskovic's previous employment could be categorized as ranging from unskilled to the low end of semi-skilled and that all of her previous positions would be categorized as light work with SVPs of 2 or 3. (Tr. 64-65) The ALJ posed several hypotheticals to Kelman. The only hypothetical that resulted in possible employment involved a residual functional capacity ("RFC") of light work with the additional non-exertional limitations of occasional interpersonal contact with coworkers that was incidental to the work performed; where the complexity of tasks is learned and performed by rote with very few variables and low judgement; occasional, simple, direct, and concrete supervision; and no direct public contact.[6] (Tr. 65-66)

---

[6] The ALJ did not explain where these limitations came from. *See Embrey v.*

Under this scenario, Kelman testified that housekeeping and certain kinds of dishwashing would be possible. (Tr. 66-67)

Tanaskovic's attorney presented Kelman with a hypothetical that mirrored the limitations in Dr. Ashamalla's RFC Form. (Tr. 67-68) Kelman responded that Tanaskovic could not perform any past work or any other work. (Tr. 68)

ALJ Decision.

The ALJ's decision tracked the requisite five step process. (Tr. 13- 25) The ALJ found that Tanaskovic had not engaged in any substantial gainful activity since her alleged onset date and had the following severe impairments: obesity, bipolar disorder, mood disorder NOS, anxiety disorder NOS, and borderline personality disorder. (Tr. 15, 16) The ALJ found that Tanaskovic did not have an impairment, or combination of impairments, that met or medically equaled the severity of a listed impairment. (Tr. 17) The ALJ found that Tanaskovic had the RFC to perform light work "limited to occasional interpersonal contact with co-workers and incidental to the work performed; work with complexity of tasks learned and performed by rote with very few variables and little judgment; and supervision that is occasional, simple, direct, and concrete, and with no direct public contact." (Tr. 18)

The ALJ gave little weight to Tanaskovic's treating physician, Dr. Ashamalla, and gave great weight to the State agency's reviewing physicians. (Tr. 21) Finally, the ALJ found that although Tanaskovic could not perform any past relevant work, her RFC meant that there were jobs that existed in significant numbers in the national economy that she could perform. (Tr. 23) Accordingly, Tanaskovic did not meet the Social Security Act's definition of disability. (Tr. 24)

**STANDARD OF REVIEW**

This court must affirm the ALJ's findings if they are supported by substantial evidence and are free from reversible error. *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th

---

*Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) ("Because the hypothetical posed by the ALJ to the vocational expert did not reflect all of Embrey's limitations, the expert's opinion has no evidentiary value and cannot support the ALJ's decision.").

- 6 -

Cir. 1990). Substantial evidence is more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence supports the ALJ's decision, the court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir. 1988). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Thus, the Court must affirm the ALJ's decision where the evidence considered in its entirety substantially supports it and the decision is free from reversible error. 42 U.S.C. § 405(g); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

## ANALYSIS

On appeal, Tanaskovic argues, among other things, that she is entitled to benefits because the ALJ failed to properly weigh Dr. Ashamalla's medical source opinion. (Doc. 25) As described below, the Court agrees. Because Dr. Ashamalla's opinion is dispositive to a finding of disability, the Court will not address Tanaskovic's arguments about the ALJ's treatment of her credibility and her sister's testimony. (Doc. 25 at 13-24)

*Treating Physician's Opinion*

The views of treating physicians are accorded great deference – deserving controlling weight, and if not in conflict with the record, can only be rejected with findings that are supported by clear and convincing reasons based on substantial evidence *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Because treating doctors are employed to cure and have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians. *Rodriguez v. Bowen*, 876 F.2d 759 (9th Cir. 1989). If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, "[t]reating source medical

1  opinions are still entitled to deference and must be weighed using all of the factors[7]
2  provided in 20 C.F.R. § 404.1527." SSR 96-2p. A treating physician's opinion that is
3  consistent with the medical evidence will be given controlling weight, and even if it is
4  inconsistent with the medical evidence, it is still entitled to deferential treatment. (*Id.*) In
5  many cases, a treating source's medical opinion will be entitled to the greatest weight and
6  should be adopted, even if it does not meet the test for controlling weight. 20 C.F.R. §§
7  404.1527, 416.927.

"The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations. Accordingly, the ultimate conclusions of those physicians must be given substantial weight." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The ALJ must give a treating physician's opinion more weight than a non-treating physician's opinion. *Reddick*, 157 F.3d at 725.

In general, opinions of physicians who do not have a treatment relationship with a claimant are weighed by stricter standards, based "to a greater degree on medical evidence, qualifications, and explanations for the opinions," than are required of treating physicians. SSR 96-6p (1996); *see generally* 20 C.F.R. § 404.1527, § 416.927 (2005). Further, more weight is given to the opinions of a specialist regarding medical issues related to their specialty than to the opinions of a source who is not a specialist. 20 C.F.R. § 404.1527 (2005). The opinion of a physician who conducted only one examination of Tanaskovic is "given less weight than the physicians who treated her." *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004).

RFC Form. It is undisputed that Dr. Ashamalla's RFC Form described limitations that render Tanaskovic disabled. (Tr. 68) The ALJ opinion gave "little weight" to Dr. Ashamalla's opinion because "the doctor's treatment notes fail[ed] to support his opinion." (Tr. 21) The ALJ provided four reasons to justify this conclusion. (Tr. 20-21)

---

[7] Factors include length of treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization and other factors.

- 8 -

According to Tanaskovic, these reasons do not provide a sufficient explanation for discounting the opinion of a treating provider. (Doc. 25 at 6-8) The Court agrees.

First, the ALJ discounted the RFC Form because Dr. Ashamalla's "treatment notes consistently document the severity of her condition [as] does not significantly interfere with function." (Tr. 20) However, a review of his treatment notes shows that this notation only appears when describing the "severity scale" of "side effects." (Tr. 765, 769) The Commissioner agrees that this finding was in error but argues that the Court should find it was harmless because Tanaskovic has not shown prejudice and because the ALJ gave additional reasons for discounting Dr. Ashamalla's opinion. (Doc. 26 at 18) Even assuming that this error was harmless, the Court cannot adopt this argument because the ALJ's additional explanations are not sufficient to justify the decision to award little weight to Dr. Ashamalla's opinion.

Next, the ALJ noted that Dr. Ashamalla "classified her global status as much improved on nearly every visit." (Tr. 20-21) The ALJ opinion cites only to the August 2013 and September 2013 visits which does not constitute "nearly every visit." Moreover, these "much improved" notations must be read along with the rest of Dr. Ashamalla's medical notes. The August 2013 treatment records' "history of present illness" section[8] states:

> Pt is feeling a bit better. She requested to fill paperwork for disability as she lives with family in a very vulnerable financial status and she tried to work in the past, but couldn't as "I can't be around people." She currently gets food stamps. She c/o of still getting nightmares, inability to sleep, she "still see[s] the man without head and hear[s] his voice but less often than before." Pt was on 4 mg of risperidone but Decreased dose due to marked sedation and being groggy at AM. She denied DTO/DTS. Mostly coherent during the interview with restricted affect.

---

[8] The format of the printed medical records makes it impossible to ascertain whether Dr. Ashamalla reaffirmed the check-box portion of his notes during each visit or whether he made these notations at her first visit and the electronic medical records software defaulted to repeating the notes at each visit. However, it is clear that the "History of Present Illness" section was a narrative that Dr. Ashamalla completed at each visit with Tanaskovic.

[sic] (Tr. 769)   The September 2013 treatment records' "history of present illness" section states:

> Pt is c/o of voices still the same. she states risperidone 2 mg helped her the most. She is c/o of anxiety that Neurontin didn't help with. She still have nightmares. She was tearful as symptoms still the same. she stated that her anxiety is overwhelming and she can't got out of home in the street. Denied DTO/STS/AVH/drug or ETOH abuse. [as in original]

[sic] (Tr. 765)   Ignoring these notations and instead relying on a generic "much improved" check box is impermissible cherry picking. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms.")

Next, the opinion simply states, "GAF 50." (Tr. 21)  Without more, this does not add support to the ALJ's evaluation of the RFC Form, although the Court notes that this is a low GAF score that could have supported a finding of impairment. *See, e.g., McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (discussing GAF score of 50).[9]

Finally, the ALJ opinion cites to Tanaskovic's August 2013 treatment notes for support that her symptoms were improving and that she was stable with medical management. (Tr. 21)  As noted above, this neither accurately captures the entirety of the August 2013 record nor does it acknowledge the rest of Dr. Ashamalla's treatment records.

Collectively, these explanations do not constitute "findings that are supported by clear and convincing reasons based on substantial evidence." *Lester*, 81 F.3d at 830. Accordingly, the ALJ did not provide a legally sufficient explanation to discount Dr. Ashamalla's opinion.

---

[9] Several paragraphs later, the ALJ reviewed and rejected the GAF scores found in the record. (Tr. 21)  The scores ranged from 50 to 65 and were rejected because they were "subjectively assessed scores [that] reveal[ed] only snapshots of impaired and improved behavior."  However, this explanation is not tied to Dr. Ashamalla's treatment notes.

- 10 -

<u>*Reviewing Physicians.*</u> The ALJ gave great weight to the assessments of the reviewing physicians because they were "generally consistent with the greater objective medical evidence of record." (Tr. 21) Tanaskovic argues that the ALJ elevated the opinion of the non-treating physicians without a sufficient justification, these opinions are entitled to less weight because the reviewing physicians did not testify at the hearing, and their stated limitations were not addressed by the ALJ and were not incorporated into the final RFC. (Doc. 25 at 11-13; Doc. 34 at 7-9) The Commissioner argues that the ALJ provided a sufficient explanation that was supported by the record. (Doc. 26 at 17)

As Tanaskovic points out, the ALJ gave great weigh to the reviewing physician's opinions but, without explanation, did not adopt their RFCs. (Tr. 21) This was a violation of Social Security Ruling 96-8p which requires that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *See* 1996 WL 374184, at *7. This leaves the ALJ's reliance on the non-examining physician's opinions devoid of legal support. Accordingly, it cannot stand.

**REMAND**

The decision to remand a case for additional evidence or for an award of benefits is within the discretion of this court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). The court can remand a case with instructions to award benefits when

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Here, all three parts of this test have been met. First, the record was fully developed and further administrative proceedings would impermissibly allow the "ALJ to have a mulligan." *Id.* at 1021. Second, as described above, the ALJ's decision did not provide sufficient reasons for rejecting the opinion of Tanaskovic's treating physician, Dr. Ashamalla. Moreover, the ALJ did not provide a sufficient explanation for rejecting the RFC limitations proposed

by the non-examining physicians.  Finally, if the ALJ had credited as true the evidence from Dr. Ashamalla, the ALJ would be required to find that Tanaskovic was disabled. (Tr. 68)

**IT IS THEREFORE ORDERED** that Tanaskovic's claim for disability is remanded to the Commissioner of the Social Security Administration for an award of benefits.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.  The judgment will serve as the mandate of this Court.

Dated this 31st day of March, 2017.

_____
David K. Duncan
United States Magistrate Judge